1  William A. Kershaw (SBN 057486)
   Lyle W. Cook (SBN 148914)
2  KERSHAW, CUTTER & RATINOFF, LLP
   401 Watt Avenue
3  Sacramento, California 95864
4  Telephone: (916) 448-9800
   Facsimile: (916) 669-4499
5
   Gregory James Owen (SBN 102845)
6  OWEN, PATTERSON & OWEN
7  23822 W. Valencia Blvd., Suite 201
   Valencia, CA 91355
8  Telephone: (661) 877-9169
   Facsimile: (661) 799-2774
9
   *Attorneys for Plaintiffs*
10

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP JOHNSON, JIMMY ALDRIDGE, RANDY VANDERMOLEN, and MATTHEW WEYUKER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC; HARLEY-DAVIDSON, INC., WHICH WILL DO BUSINESS IN CALIFORNIA AS: (WISCONSIN) HARLEY-DAVIDSON, INC.; HARLEY-DAVIDSON MOTOR COMPANY, INC.; and DOES 1-50.<br><br>Defendants. | Case No. 2:10-CV-02443-JAM-EFB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, HARLEY-DAVIDSON, INC. AND HARLEY-DAVIDSON MOTOR COMPANY, INC.'S MOTION TO EXCLUDE EXPERT DECLARATION AND TESTIMONY OF RUSSELL DARNELL**<br><br>Date: May 2, 2012<br>Time: 9:30 a.m.<br>Courtroom: 6<br><br>Honorable John A. Mendez |

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ........................................................................................................... 1

II.  HARLEY-DAVIDSON'S MOTION IGNORES THE PURPOSE OF EXPERT
     TESTIMONY IN SUPPORT OF OR OPPOSITION TO A MOTION FOR
     CLASS CERTIFICATION ............................................................................................ 4

III. DR. DARNELL'S TESTIMONY REGARDING THE CORE PRINCIPLES OF
     PRODUCT DESIGN IS ADMISSIBLE EXPERT TESTIMONY ................................ 7

IV.  DR. DARNELL'S TESTIMONY REGARDING THE NATURE OF, AND THE
     EVOLUTION OF, MOTORCYCLE COOLING SYSTEMS IS ADMISSIBLE
     EXPERT TESTIMONY ................................................................................................ 8

V.   DR. DARNELL'S TESTIMONY CONCERNING DEFENDANTS OWN
     ENGINEERING REPORTS ON ITS AIR-COOLED V-TWIN DESIGN
     MOTORCYCLES IS ADMISSIBLE EXPERT TESTIMONY .................................... 8

VI.  THE RELATIONSHIP BETWEEN ENGINE HEAT AND PREMATURE WEAR
     AND FAILUR OF MECHANICAL PARTS IS ADMISSIBLE EXPERT
     TESTIMONY ............................................................................................................... 11

VII. TESTIMONY REGARDING HARLEY-DAVIDSON'S KNOWLEDGE THAT
     ITS AIR COOLED DESIGN CAUSED EXCESSIVE HEAT IS ADMISSIBLE
     EXPERT TESTIMONY .............................................................................................. 11

VIII. DR. DARNELL'S TESTIMONY THAT THE "EITMS" MODIFICATIONS WILL
     HAVE NO EFFECT DURING A WIDE RANGE OF REASONABLY
     FORESEEABLE OPERATING CONDITIONS IS ADMISSIBLE EXPERT
     TESTIMONY ............................................................................................................... 12

IX.  DR. DARNELL'S TESTIMONY REGARDING THE MEANING OF THE
     WARNING GIVEN IN HARLEY-DAVIDSON'S PRODUCT LITERATURE IS
     ADMISSIBLE EXPERT TESTIMONY ..................................................................... 12

X.   DR. DARNELL'S OPINIONS REGARDING A FEASIBLE ALTERNATIVE
     DESIGN IS ADMISSIBLE EXPERT TESTIMONY ................................................. 13

XI.  MERITS OPINIONS REGARDING EXCESSIVE HEAT CAUSED BY A DESIGN
     DEFECT ARE PREMATURE AT THIS STAGE OF THE LITIGATION .................. 13

XII. CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Am. Honda Motor Co. v. Allen,*
    600 F.3d 813 (7th Cir. 2010) .................................................................................... 5,6,7

*Behrend v. Comcast Corp.,*
    655 F.3d 183 (3rd Cir. 2011) ......................................................................................... 5

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993) ............................................................................................. *passim*

*Ellis v. Costco Wholesale Corp.,*
    67 F.3d 970 (9th Cir. 2011) ........................................................................................ 5,6

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................... 1,4

*In re Hydrogen Peroxide Antitrust Litigation,*
    552 F.3d 305 (3d. Cir. 2008) ......................................................................................... 5

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,*
    401 F.3d 901 (8th Cir. 2005) ......................................................................................... 4

*Pineda v. Ford Motor Co.,*
    520 F.3d 237 (3rd Cir. 2008) ........................................................................................ 4

*Wal-Mart v. Dukes,*
    131 S. Ct 2541 (2011) ................................................................................................ 1,4

## STATUTES

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................................ 5,6

Federal Rules of Evidence
    Rule 702 ................................................................................................................ *passim*

I. **INTRODUCTION**

In its motion to exclude *all* of Dr. Darnell's testimony, Defendants Harley-Davidson Motor Company Group, LLC, Harley-Davidson, Inc. and Harley-Davidson Motor Company, Inc. (collectively "Harley-Davidson") do not challenge most of it.[1] In addition, Harley-Davidson misapprehends the purpose of expert testimony offered in support of or in opposition to class certification. The issue on class certification is a procedural one — whether there is "cause to believe that [the class claims] can be productively litigated at once." *Wal-Mart v. Dukes,* 131 S. Ct 2541, 2551 (2011). The test for predominance recognizes this and focuses on whether significant aspects of the case can be resolved for all class members in a single adjudication. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998). Because the issue for class certification is *procedural*, the issue for expert testimony, if it is to be helpful to the Court under Rule 702, is *methodological*.

The engineering issue in this case is whether a common cooling system design results in excess and unsafe heat. The question at the class certification stage is, therefore, whether testing methods are available for deciding this engineering issue. Within this appropriate frame of reference, Harley-Davidson's motion to exclude Dr. Darnell's testimony largely misses the point and provides no good reason to exclude the relevant portions of his expert opinion testimony.

Almost the entirety of Harley-Davidson's motion to exclude Dr. Darnell's testimony rests on the contention that Dr. Darnell has not conducted extensive testing that could be reasonably applied to the class motorcycles to conclude, *on the merits*, that there is excessive and unsafe heat caused by a defective design. But Plaintiffs are not required to prove the class case on the merits at this stage of the proceedings.[2] What Plaintiffs have shown, as repeatedly corroborated by Harley-Davidson's own engineering department, and as shown by Harley-Davidson's proffered testing expert, is the unsurprising but critical fact that the class of air-cooled V-Twin motorcycles

---

[1] The motion brought by Harley-Davidson targets relatively few of his opinions. (*See* Defendants' Memorandum of Points and Authorities in Support of Motion to Exclude Expert Declaration and Testimony of Russell Darnell ("Defendants' Brief") at 2:11-3:3.)

[2] In fact, as explained in detail in the opposition to Harley-Davidson's motion for summary judgment, the parties had an agreement, approved by the Court, that merits discovery would occur after the motion for class certification was decided.

can be tested to determine whether they produce excessive and unsafe heat under reasonably foreseeable operating conditions.

More particularly, what Plaintiffs have shown, with the support of Dr. Darnell's largely unchallenged and admissible expert testimony is that:[3]

- There is a common design at issue, Harley-Davidson's air-cooled V-Twin engine design.
- The effectiveness of this design is impacted by the need to comply with current federal and state emissions regulations, which increases the heat that must be dissipated by the cooling system. (Darnell Decl. at ¶¶ 19-24.)
- Harley-Davidson's engineers recognized that significant heat issues accompanied the legal requirement to run a leaner air/fuel mixture, and to introduce other pollution control devices. (Darnell Decl. at ¶¶ 27-32 and Exs. 3-5.)
- Harley-Davidson's engineers tested and measured the heat levels and documented the problem of excessive heat caused by Harley-Davidson's air-cooled V-Twin design and tried to fix it with the EITMS disabling software. (*Id.*)
- The EITMS fix, by the nature of its design, operates under limited circumstances and will have a minimal impact or no impact on the amount of heat produced by the air-cooled V-Twin design under many reasonably foreseeable operating conditions. (Darnell Decl. at ¶¶ 57-65.)
- And most important of all, the level of heat typically experienced by riders under a foreseeable range of operating conditions, and whether that heat is excessive under some conditions, *can be determined* by scientific testing.

The last point is the crucial one at this stage of the proceedings and it has not been challenged by Harley-Davidson, nor could it. The work of Harley-Davidson's engineers, who

---

[3] A copy of the Declaration of Russell E. Darnell, Ph.D. in Support of Plaintiffs' Motion for Class Certification ("Darnell Decl.") is attached as Exhibit 6 to the Declaration of William A. Kershaw in Support of Plaintiffs' Request to Defer or Deny Defendants' Motion for Summary Judgment Pursuant to Rule 56(d) and, in the Alternative, Opposition to Defendants' Motion for Summary Judgment Against Plaintiff Matthew Weyuker; and Opposition to Motion to Exclude Testimony of Russell Darnell ("Kershaw Dec.") filed herewith.

performed their assignments without regard to this litigation, confirms the testability of the central common contention in this case, which is that the level of heat experienced by riders of the class of air-cooled V-Twin motorcycles can be measured to determine if it is excessive and unsafe under reasonably foreseeable operating conditions. (*See*, Darnell Decl. at ¶¶ 27-29 and Ex. 3.) Defendants' retained expert also confirms that reasonable methodologies are available and that these methodologies are capable of generating a set of common data regarding the levels of heat experienced by riders under reasonably foreseeable operating conditions. (*See*, Declaration of Alex Wagner-Jauregg filed March 26, 2012 [Dkt. No. 75].) Plaintiffs' expert further confirms the availability of scientific methodologies capable of deciding the significant common contentions in this proposed class action. (Kershaw Dec. at Ex. 14, ¶¶ 18-20.) Dr. Darnell did this in his original Declaration. Dr. Darnell has also performed additional testing to confirm the reliability of testing methodologies, like those proposed by Harley-Davidson's retained expert, while also calling into question the reliability of the results reported by Harley-Davidson's expert.[4] In short, as to the most important of Dr. Darnell's opinions for purposes of class certification, there is no dispute and no legitimate Rule 702 challenge to his opinion.

In the sections that follow, the legal test for admissible expert testimony in support of or in opposition to class certification will first be examined. Dr. Darnell's opinion testimony will then be considered in light of its purpose when offered in support of a motion to certify a class. What clearly emerges is that most of Dr. Darnell's opinion testimony has not been challenged by Harley-Davidson's *Daubert* motion and cannot, therefore, be excluded by reason of it. In other instances, the testimony is relevant, reliable and helpful on the critical issue of whether scientific testing can be done to produce common evidence on the common question of a design defect.

---

[4] Harley-Davidson submitted the expert Declaration of Alex Wagner-Jauregg in support of its motion for summary judgment and opposition to class certification. (*See*, Dkt. No. 75.) While Mr. Wagner-Jauregg's results are implausible and contradicted by other testing (*see* Kershaw Dec. at Ex. 14 ("Darnell Decl. II," dated April 18, 2012), Pars. 15-16), the crucial point for the present motion is that his report confirms that testing methodologies are capable of producing a common body of heat temperature data that can be analyzed to determine whether or not Harley-Davidson's air-cooled V-Twin design produces excess and unsafe heat under reasonably foreseeable operating conditions.

1  Finally, in some instances, the basis for the testimony — if understood as going to an ultimate conclusion on the merits — is not yet sufficiently developed and the testimony is, therefore, being withdrawn. *See, infra*, at Section XI.

## II.  HARLEY-DAVIDSON'S MOTION IGNORES THE PURPOSE OF EXPERT TESTIMONY IN SUPPORT OF OR OPPOSITION TO A MOTION FOR CLASS CERTIFICATION

The starting point to gauge the appropriateness of expert testimony in federal court is Federal Rules of Evidence 702.  That rule, including its 2000 amendments to incorporate the *Daubert* holding, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

"The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact."  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3rd Cir. 2008). Accordingly, "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Id.* at 243. *Daubert* and its progeny make it clear that much leeway is afforded to assure a robust adversary proceeding. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  Under Rule 702, "[t]he focus ... must be solely on principles and methodology [of the expert witness], not on the conclusion that they generate." *Id.*; 509 U.S. at 595.  Weight assessment is not an appropriate *Daubert* challenge.  *See Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 916 (8th Cir. 2005).

Of course, when offered in support of or opposition to a class certification motion, the test for admissible expert testimony should reflect the purpose of that testimony.  A motion for class certification is directed to the trial court, which is afforded discretion in making the procedural

-4-

decision as to whether a class should be certified. The trial court, in turn, also has the discretion to decide whether proffered expert testimony will be helpful to it in making the procedural determination of whether to certify a proposed class action.

In *Ellis*, the Ninth Circuit recently confirmed that expert testimony in support of or opposition to class certification is subject to the *Daubert* standard for the purpose of determining its admissibility. *Ellis v. Costco Wholesale Corp.*, 67 F.3d 970, 982-83 (9th Cir. 2011). The Ninth Circuit also made clear that the purpose of the assessment was in connection with Rule 23 requirements, not the underlying merits. *Id.* at 983, n.7.

In *Behrend*, the Third Circuit recognized the importance of this distinction at the class certification stage. With respect to the analysis of expert testimony, "[w]e begin . . . by focusing on the precise inquiry:

> Plaintiffs' burden at the class certification stage is not to prove the element of antitrust impact, although in order to prevail on the merits each class member must do so. Instead, the task for plaintiffs at class certification is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members."

*Behrend*, 655 F.3d at 197, quoting *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 311-312 (3d. Cir. 2008).

As did the defendant in *Behrend*, Harley-Davidson "ignores the proper inquiry at class certification and instead prematurely attacks the merits of the model." *Id.* at 203. This sort of challenge is mistaken because the question at the class certification stage focuses on the "expert models to determine whether the theory of proof is plausible." *Behrend v. Comcast Corp.*, 655 F.3d 183, 204 n.13 (3rd Cir. 2011). Plaintiffs' theory of proof — that heat experienced by riders under reasonably foreseeable operating conditions can be measured and compiled in a comprehensible data set to determine significant common contentions in this proposed class action — is not only plausible, it is undisputed.

Most of the cases cited by Harley-Davidson in support of its *Daubert* motion are not cases involving expert testimony in support or opposition to class certification. Rather, the cases deal with the admissibility of expert opinion testimony where an ultimate merits determination is at

issue. Unlike most of the other cases it cites, the *American Honda* case does apply the *Daubert* standard to exclude expert testimony in support of a motion to certify a class.

In *American Honda*, the issue presented to the Seventh Circuit Court of Appeal was "whether the district court must conclusively rule on the admissibility of an expert opinion prior to class certification in this case because that opinion is essential to the certification decision." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 814 (7th Cir. 2010). In that case the trial court determined that "most of Plaintiffs' predominance arguments rested upon the theories advanced by [Plaintiffs' proffered expert] Mr. Ezra." *Id.* Again, the issue was whether the district court must resolve a *Daubert* challenge prior to ruling on class certification *if the testimony challenged is integral to the plaintiffs' satisfaction of Rule 23's requirements*. *Id.* at 815. Because the testimony was found to be integral to satisfaction of Rule 23's requirements, the Seventh Circuit held that the trial court must resolve challenges to qualifications and "any challenge to reliability of information provided by an expert if the information is relevant to establishing any of the Rule 23 requirements for class certification." *Id.* at 816.

It is on this precise question that Harley-Davison's *Daubert* challenge to Dr. Darnell's testimony misses the mark. Harley-Davison makes no challenge to most of Dr. Darnell's testimony. Harley-Davidson does correctly observe, as Dr. Darnell himself makes clear in his deposition testimony, that Dr. Darnell has not completed a comprehensive testing program of the class motorcycles to reach an ultimate opinion on the merits as to whether Harley-Davidson's air-cooled design causes excessive and unsafe heat. But the class issue is whether this can be shown by common proof. The expert issue, therefore, with respect to "establishing any of Rule 23 requirements for class certification," is whether scientific testing is capable of deciding the common contention. Under Rule 23, the issue is not whether this common contention must be conclusively decided in favor of the proposed Plaintiff class, but rather whether the issue is decidable for the class. *See Ellis*, 67 F.3d at 983, n.7. This critical distinction between a final decision on the merits, and the decidability of a common contention by means of common proof, completely eludes Harley-Davidson in its opposition to class certification and in its *Daubert* challenge to Dr. Darnell's testimony.

In *American Honda* the Court of Appeal found that "the 'theory' here is Ezra's wobble decay standard, and, as the district court thoroughly enumerated, there are many reasons to harbor 'definite reservations' about its reliability." *Id.* at 817. There was, in fact, no evidence that any other expert accepted Mr. Ezra's theory and there was no testing to "determine the minimal wobble, or amplitude at which riders detect oscillation." *Id.* at 817. The relevant question for class certification purposes was, therefore, the testability of the common contention.

Here, Dr. Darnell, through his examination of the testing of Harley Davison's own engineers, and his own experience and expertise, has reliably concluded that the heat experienced by riders of Harley-Davison's air-cooled V-Twin motorcycles, under a range of reasonably foreseeable operating conditions, is testable and is capable of producing results in the form of common proof on the common class contention of a design defect. Harley-Davidson's own engineers have acknowledged that ████████████████████████████████████████████████████████████████████████ (Kershaw Decl., Ex. 6 (Darnell Decl. at Ex. 3, H-D_Johnson_003249).) On this methodological issue, unlike in *American Honda*, there is no reasonable doubt.

Harley-Davidson's engineers have demonstrated that the "theory," which is to say the testability of the heat experienced by riders, is reliable. In addition, while there is good reason to doubt the results set forth in the report of Harley-Davidson's retained expert, which often do not pass even the test of common sense, Harley-Davidson's expert absolutely confirms in his report that the common contention is scientifically testable. This is further confirmed by Dr. Darnell's Declaration filed in support of this opposition, which performs additional testing. (Kershaw Decl. at Ex. 14.) While there are anomalous results (from Harley-Davidson's retained expert), what is demonstrated by all the testing from all the experts is that reliable methodologies exist that are capable of producing common proof to decide the common contention of a design defect.

### III. DR. DARNELL'S TESTIMONY REGARDING THE CORE PRINCIPLES OF PRODUCT DESIGN IS ADMISSIBLE EXPERT TESTIMONY

Dr. Darnell's opinion testimony begins in paragraphs 16 through 18 of his Declaration. (Darnell Decl. at ¶¶ 16-18.) In that portion of his testimony he explains the basic design

principles when there are safety concerns. This relevant expert testimony is not challenged by Harley-Davidson's motion to exclude because there is no basis for challenging it. This unchallenged portion of Dr. Darnell's expert testimony is admissible expert testimony and should not be excluded.

## IV. DR. DARNELL'S TESTIMONY REGARDING THE NATURE OF, AND THE EVOLUTION OF, MOTORCYCLE COOLING SYSTEMS IS ADMISSIBLE EXPERT TESTIMONY

Of critical importance to this case is the way in which stricter emissions standards have resulted in increased heat produced by motorcycle engines. Against this backdrop, it is also important to understand the significance of the increasing size of Harley-Davidson's air-cooled V-Twin design because "all else equal" the size of the engine coupled with the production of stricter emissions standards will significantly increase the production of heat. Some technical understanding of how motorcycle cooling systems must be designed to manage heat is also important in understanding the claims brought on behalf of the proposed class. Finally, the industry response to stricter emissions standards, and the heat challenges they present, is also relevant to the class claims.

On each of these subjects, in paragraphs 19-26 of his declaration, Dr. Darnell offers expert opinion testimony that has not been challenged by Harley-Davidson in its motion. (Darnell Decl. at ¶¶ 19-26.) Nor is there any basis for challenging this testimony. Accordingly, this portion of Dr. Darnell's testimony is admissible expert testimony and should not be excluded.

## V. DR. DARNELL'S TESTIMONY CONCERNING DEFENDANTS OWN ENGINEERING REPORTS ON ITS AIR-COOLED V-TWIN DESIGN MOTORCYCLES IS ADMISSIBLE EXPERT TESTIMONY

Harley-Davison may wish that common proof in the form of its own pre-litigation Engineering Reports and Test Incident Reports did not exist. Harley-Davidson may also wish that the results reported by its engineers were less condemning of its air-cooled V-Twin engine design. But that does not mean that Harley-Davidson's engineering reports are not the reasonable subject of expert testimony in this case. In paragraphs 27-32 of Dr. Darnell's Declaration, he explains the test methodologies and test results of some of the engineering reports Harley-Davidson has

-8-

produced in this litigation. (Darnell Decl. at ¶¶ 27-32.)

Dr. Darnell first explains the significance of the Engineering Report dated June 24, 2003. In paragraph 28, Dr. Darnell specifically explains the test methodology using a "Teflon Leg Assembly" and summarizes and gives meaning to the data collected. There is no defect in the expert testimony concerning the June 24, 2003 report. Harley-Davidson complains that the air-cooled V-Twin cam design motorcycle that it tested was an earlier model year, but this does not call into question the proven availability of reliable testing methodologies. Where the main lesson to be drawn from the engineering reports is whether the class motorcycles can be tested for excessive heat, Dr. Darnell's testimony to this effect should not be excluded.

Dr. Darnell next considered the engineering testing that was performed by Harley-Davidson in 2004 and 2005 and addressed those reports in paragraphs 30 and 31 of his Declaration. Like the 2003 report, the data from these reports show consistently higher temperatures on the right leg and substantial temperature increases when the speed is decreased. The results of these tests, which use similar testing methodologies, are of course relevant and a proper subject for expert testimony. In this case, when it does come time for proof on the merits, these reports will be a proverbial "smoking gun" because they show that excess heat was a problem and Harley-Davidson was fully aware of the problem.

The reports also show that the excess heat was understood as being a function of the air-cooled design. It is proper for an expert to explain that Harley-Davidson's air-cooled design depends upon the movement of air and that this means that a certain range of reasonably foreseeable operation conditions will produce much higher temperatures experienced by the rider. This is a function of the Harley-Davidson air-cooled V-Twin design, which first places one cylinder behind the other, then strives to use a compromised (by the cylinder location) air cooling system, knowing that the motorcycle will be operated under circumstances where air movement will be lost, and under legal regulatory conditions that no longer allow it to manage heat (as it had in the past) by a rich fuel mixture, which creates pollution.

What the 2004 and 2005 testing shows is that this design does not work well and produces much more heat on the tested leg assembly at slow speeds. There is every reason to believe that

these results are reliable and have been reliably examined and reported by Dr. Darnell in his expert testimony. Even more importantly, there is no reason to believe that test data relevant to the common contentions made on behalf of the class cannot be reliably taken and interpreted by experts on both sides for the purpose of resolving common issues.

Dr. Darnell also considered an engineering report dated January 11, 2005 that reflects that excessive heat had become one of the highest customer complaints. In addition, the technical portion of the engineering report evaluates the important issue of how "calibration can affect engine temperature and the convective heat transfer felt by the rider." This provides support for Dr. Darnell's expert opinion, which has not been subject to any reasonable challenge by Harley-Davidson, that emissions standards, which require engine calibration to be run lean, is a significant factor that must be taken in account in the design of Harley-Davidson's V-Twin cooling system.

In addition to these engineering reports, in paragraphs 35-36, Dr. Darnell reviewed and explained the significance of a Test Incident Report concerning a 2007 touring model.[5] (Darnell Decl. at ¶¶ 35-36.) The test confirmed excessive heat, and that this excessive heat was a known problem, and that no action would be taken to correct this known problem. As explained in Dr. Darnell's testimony, this is an important company document that confirms, as Dr. Darnell opines in paragraph 37, "that Harley-Davidson's Big V-Twins have a problem with heat at idle" and that Harley-Davidson was aware of the problem.

The opinions offered by Dr. Darnell, which are based on Harley-Davidson's own Engineering Reports and Test Incident Reports, are reliable and satisfy all the requirements for expert testimony under Rule 702. Of course, Harley-Davidson feels it must try and push back against the significance *of its own condemning testing and reports*, but this does not provide good reason to exclude Dr. Darnell's testimony on this subject.

---

[5] Another Test Incident Report from 2007 states that the test rider "experienced excessive heat emanating from the engine," that an area from which excessive heat was emanating "received no wind and was dead air," that the rider's calves became "heated, the right more so than the left" and that "[t]he only reason the rider continued to ride this vehicle was that he was being paid to do it. If this was the rider's personal bike, he would have parked it." (Kershaw Decl. at Ex. 9, H-D_ Johnson _3664-66.)

## VI. THE RELATIONSHIP BETWEEN ENGINE HEAT AND PREMATURE WEAR AND FAILUR OF MECHANICAL PARTS IS ADMISSIBLE EXPERT TESTIMONY

In paragraphs 47 through 49, of Dr. Darnell's Declaration he explains the relationships between engine temperature and mechanical wear, tear and failure of engine parts and related components. (Darnell Decl. at ¶¶ 47-49.) There is nothing controversial about this testimony and no reason to exclude it. The purpose of the testimony is to make the Court aware, by means of expert testimony, of the relationship between excessive engine heat and premature wear and failure of mechanical systems.

## VII. TESTIMONY REGARDING HARLEY-DAVIDSON'S KNOWLEDGE THAT ITS AIR COOLED DESIGN CAUSED EXCESSIVE HEAT IS ADMISSIBLE EXPERT TESTIMONY

Based on a review of historical documents, and his expertise, Dr. Darnell opined, in paragraph 50 of his Declaration, that Harley-Davidson knew its air-cooled engine design caused excessive heat. His opinion was based in part on documents produced by Harley-Davidson. Although it could be argued that expert testimony is not needed on the subject of what these documents show, there is benefit in an expert assessment of what the technical engineering reports reveal about Harley-Davidson's knowledge of the problem of excessive heat.

The need for expert testimony is particularly acute with regard to the inferences to be drawn from Harley-Davidson undertaking the design and implementation of the EITMS disabling system. The strength of the inference that Harley-Davidson knew it had a problem with excessive heat depends, at least in part, on a technical understanding of what the EITMS system was designed to do, and expert testimony on this subject is permissible under Rule 702. Harley-Davidson arguably admits that the EITMS was intended to combat the problem of excess heat, but it is, nonetheless, appropriate for Plaintiffs to proffer expert testimony at the class certification stage that shows — given the nature of the proposed engineering fix — that there was a known problem with heat management at idle.

The expert question of whether the EITMS is able to function as a reasonable fix to the problem of excess heat at slow speeds is the subject of Dr. Darnell's testimony at paragraphs 57-65 of his Declaration, which are discussed in the next section.

## VIII. DR. DARNELL'S TESTIMONY THAT THE "EITMS" MODIFICATIONS WILL HAVE NO EFFECT DURING A WIDE RANGE OF REASONABLY FORESEEABLE OPERATING CONDITIONS IS ADMISSIBLE EXPERT TESTIMONY

Harley-Davidson challenges Dr. Darnell's opinion on the EITMS because it is not supported by testing or studies. It wrongly concludes from this that it must be solely speculation. But this misunderstands the thrust of Dr. Darnell's testimony in paragraphs 57-64 of his Declaration. Dr. Darnell examined the patent and other documents concerning the EITMS and opined as to the limited circumstances in which, by Harley-Davidson's own account, the EITMS disabling software would be capable of having some effect. (The disabling software takes the rear cylinder out of operation under limited operational circumstances.) Harley-Davidson does not dispute this testimony about the time it would take for the EITMS (in the very limited circumstances in which it is activated) to provide any meaningful reduction in heat. Dr. Darnell's testimony on this subject is reliable and admissible.

Dr. Darnell also points out that none of the documents produced by Harley-Davidson explain how, given these limitations, temperature can be reduced and to what degree over what time period. This is a subject that can be tested. Nowhere, does Harley-Davidson call into question that reasonable methodologies are capable of determining what if any ameliorative effect the EITMS will have on the heat produced by its air-cooled V-Twin design under a range of reasonably foreseeable and intended operating conditions.

## IX. DR. DARNELL'S TESTIMONY REGARDING THE MEANING OF THE WARNING GIVEN IN HARLEY-DAVIDSON'S PRODUCT LITERATURE IS ADMISSIBLE EXPERT TESTIMONY

Harley-Davidson does not challenge Dr. Darnell's testimony, at paragraphs 66 and 67 of his Declaration, that its product literature fails to give a warning of the safety hazard of excess heat. (Darnell Decl. at ¶¶ 66-67.) The need for expert testimony on this subject arises out of the fact that there is a warning given about heat that relates to actual contact with the exhaust system. It is important to understand that this is a standard warning that gives no warning of the alleged excess heat caused by the defective engine design, and Dr. Darnell has the unquestioned expertise to make this distinction. His unchallenged testimony on this subject is admissible and should not

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT
DECLARATION AND TESTIMONY OF RUSSELL DARNELL

be excluded.

## X. DR. DARNELL'S OPINIONS REGARDING A FEASIBLE ALTERNATIVE DESIGN IS ADMISSIBLE EXPERT TESTIMONY

Harley-Davidson complains of Dr. Darnell's uncontroversial opinion that a feasible alternative to the air-cooled V-Twin design exists in the form of the industry standard liquid cooling system. In challenging Dr. Darnell's opinion, Harley-Davidson mischaracterizes it by claiming that Dr. Darnell's opinion must be excluded because he opines (a) that "Harley-Davison must retrofit its motorcycles with liquid cooled engine" while (b) "he believes that its air cooled engines can be designed so that they do not produce alleged excessive heat and, therefore, are not defective." (Br. at 16:15-18.) Once Dr. Darnell's actual testimony is understood, this false construct, provides no reason to exclude it.

Harley-Davidson offers no challenge whatsoever to Dr. Darnell's actual opinion testimony that "a feasible alternative to Harley-Davidson's air-cooled design exists in the form of the industry standard liquid cooling system." (Darnell Decl. at ¶ 51.) Nor does Harley-Davidson call into question Dr. Darnell's testimony concerning its own documents that show they had built a solution previously. (Darnell Decl. at ¶¶ 52-54.) Since no reasonable challenge has been made to the actual opinions contained in paragraphs 51-56 of Dr. Darnell's declaration, there is no reason to exclude this admissible testimony.

## XI. MERITS OPINIONS REGARDING EXCESSIVE HEAT CAUSED BY A DESIGN DEFECT ARE PREMATURE AT THIS STAGE OF THE LITIGATION

The primary focus of Harley-Davidson's challenge to Dr. Darnell's testimony concerns the merits conclusions, contained in a relatively small portion of the text of his Declaration. (*See* Br. at 2:12-3:3 (identifying the challenged paragraphs).) In total, the identified opinions that are being challenged consist of 14 paragraphs. Many of these have been addressed above. The remaining paragraphs that have not been addressed are paragraphs 33, 38, 42, 43, 46. In these paragraphs, based on the reviews he performed of Harley-Davidson's own engineering reports, the information he had from riders, and the limited testing he performed, Dr. Darnell offered the broad opinion that Harley-Davidson's defective air-cooled design results in excessive heat that

results in unsafe operating conditions and that has caused severe burn injuries.

While there is considerable information available that points in this direction, an ultimate opinion on the merits is premature at this stage. Sufficient expert work has not yet been done to reliably support an ultimate conclusion on the merits of the controversy. Plaintiffs are, therefore, withdrawing Dr. Darnell's opinions in paragraphs 33, 34 38, 42, 43 and 46. Plaintiffs do believe that this testimony illustrates the way in which undisputed testing methodologies can eventually be used to reach reliable conclusions in this case.

## XII. CONCLUSION

Harley-Davidson's motion to exclude all of Dr. Darnell's expert opinions fails to even address most of them. As to other of his opinions, Harley-Davidson's motion depends upon a false understanding of the actual opinions and do not give good reason to exclude them. Harley-Davidson's motion as to some of Dr. Darnell's opinions, where an ultimate conclusion on the merits is expressed before all the necessary work for that opinion has been completed, has force, and Plaintiffs are withdrawing certain of Dr. Darnell's opinion testimony on this ground.

For purposes of class certification, Dr. Darnell's relevant testimony has not been challenged. Harley-Davidson's own retained expert, and its own engineers who performed pre-litigation testing, agree with Dr. Darnell on what is the most important of his expert opinions in support of class certification: namely, that reliable methodologies exist that are capable of producing the relevant data needed to determine whether Harley-Davidson's air-cooled V-Twin design is defective because it produces excessive and unsafe heat under reasonably foreseeable operating conditions.

Dated: April 18, 2012.            KERSHAW, CUTTER, & RATINOFF, LLP


By: /s/ *William A. Kershaw*
WILLIAM A. KERSHAW
*Attorneys for Plaintiffs*