1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  PHILLIP JOHNSON, JIMMY ALDRIDGE, )   Case No. 2:10-CV-02443 JAM-EFB
    RANDY VANDERMOLEN, and MATTHEW   )
12  WEYUKER, individually and on     )
    behalf of all others similarly   )   ORDER DENYING PLAINTIFFS'
13  situated,                        )   MOTION FOR CLASS CERTIFICATION
                                     )
14                  Plaintiffs,      )
                                     )
15       v.                          )
                                     )
16                                   )
    HARLEY-DAVIDSON MOTOR COMPANY    )
17  GROUP, LLC, HARLEY-DAVIDSON,     )
    INC., WHICH WILL DO BUSINESS IN  )
18  CALIFORNIA AS: (WISCONSIN)       )
    HARLEY-DAVIDSON, INC., HARLEY-   )
19  DAVIDSON MOTOR COMPANY, INC.,    )
    and DOES 1-50,                   )
20                                   )
                    Defendants.      )
21  _____ )

22       This matter comes before the Court on Plaintiff Matthew

23  Weyuker's ("Weyuker") Motion for Class Certification (Doc. #56).[1]

    Defendants Harley-Davidson Motor Company Group, LLC, Harley-

24  Davidson, Inc., and Harley-Davidson Motor Company, Inc.

25  _____

26  [1] Weyuker is the only named plaintiff remaining in the case.  The
    other plaintiffs, Phillip Johnson, Jimmy Aldridge, and Randy
27  Vandermolen, are withdrawn as proposed class representatives (Doc.
    #56, n.1).  Since Plaintiffs refer to themselves in the plural to
28  reflect the putative class, this Order refers to Plaintiffs in the
    plural as well.

                                    1

1  ("Defendants" or "Harley-Davidson") oppose the motion (Doc.

2  #78).  A hearing on this motion was held on May 2, 2012.

3

4                    I.     FACTUAL AND PROCEDURAL BACKGROUND

5       This case involves an alleged defect in the V-Twin Cam

6  motorcycles produced and sold by Defendants.  Plaintiffs allege

7  that the degree of engine heat generated when V-Twin Cam

8  motorcycles are used as intended presents an unreasonable risk

9  of burns to users and also causes premature wear of mechanical

10  systems.  The core class allegation is that the air-cooled V-

11  Twin design is defective under existing emission standards.

12  Plaintiffs allege that to alleviate the excessive heat generated

13  from the air-cooled design, Defendants attempted a fix called

14  the Engine Idle Temperature Management System ("EITMS"), which

15  shuts off fuel to just the rear cylinder when the engine is

16  idle.  Plaintiffs allege the EITMS is ineffective.  Plaintiffs

17  aver that the allegedly excessive heat produced by Defendants'

18  motorcycles can distract riders, which presents a serious safety

19  hazard to the operator, passengers, and even to others using

20  public roadways.

21       Harley-Davidson motorcycles with TC88 and TC96 engines come

22  in three families: Dyna, Softail, and Touring.  The proposed

23  class includes 14 different models within the Dyna family, 27

24  within the Softail family, and 23 within the Touring family.

25  Considering each model and model year combination as a separate

26  configuration, Defendants argue that the proposed class includes

27  purchasers of 130 distinct configurations of motorcycles sold

28  new between 2005-2011. Plaintiffs do not dispute that there are

130+ configurations.

The named Plaintiff is Matthew Weyuker.  He purchased a 2009 Harley-Davidson Softail Cross Bones motorcycle on June 29, 2010 in Sacramento, California.  Weyuker's 2009 Harley-Davidson Cross Bones has an air-cooled V-Twin Cam 96 cubic inch engine. Although Weyuker purchased his motorcycle new, it was not in factory condition.  The exhaust shield had been removed and the exhaust pipes had been wrapped with aftermarket exhaust pipe wrap.  Weyuker's friend rode the motorcycle from the dealer to Weyuker's home and immediately noticed excessive heat.  Weyuker noticed uncomfortable heat from the engine the first time he rode the motorcycle for more than 20 minutes.  Weyuker declares that on approximately six occasions, his pants have burned as a result of the heat coming off the engine.  In July 2010, while driving in stop and go traffic, Weyuker's pants literally caught on fire.  Weyuker went back to the dealer where he bought the motorcycle to complain on one occasion.  The dealer suggested a race tuner, which Weyuker elected not to install because he believed it would void the warranty.  At the time of his deposition, he had ridden his motorcycle 9,700 miles, about 6,000 miles per year.

Plaintiffs filed their Complaint (Doc. #1) on September 10, 2010.  After filing amended complaints and surviving a motion to dismiss, Plaintiffs filed their Fourth Amended Complaint (Doc. #48) on August 11, 2011.  Plaintiffs allege six causes of action: (1) Strict Products Liability; (2) Violations of California Business & Professions Code §§ 17200, et seq. ("UCL"); (3) Violations of the Breach of Express and Implied

1   Warranty; (4) Negligence; (5) Unjust Enrichment; and

2   (6) Violations of the Consumers Legal Remedies Act ("CLRA"),

3   Cal. Civ. Code §§ 1750, et seq.  On August 25, 2011, Defendants

4   filed their Answer (Doc. #51).  On January 6, 2012, Plaintiffs

5   filed the instant Motion to Certify Class ("MCC") (Doc. #56).

6   On March 26, 2012 Defendants filed their Motion to Exclude

7   Expert Declaration and Testimony of Russell Darnell ("Motion to

8   Exclude") (Doc. #71).  That same day, Defendants filed their

9   Motion for Summary Judgment (Doc. #73).  On April 24, 2012 the

10  Court granted Plaintiffs' Request to Defer Defendants' Motion

11  for Summary Judgment (Doc. #98).

12      At the hearing on May 2, 2012, the Court denied Defendants'

13  Motion to Exclude.  Plaintiffs had voluntarily withdrawn those

14  portions of Russell Darnell's ("Darnell") declaration that

15  contained expert opinions concerning issues going to the merits

16  of this case (paragraphs 33, 38, 42, 43, and 46) and the Court

17  held it would consider the remaining portion of Darnell's

18  declaration only in so far as it concerned class certification

19  issues.

20      Plaintiffs' proposed class for purposes of their Motion for

21  Class Certification is as follows:

22      All persons who between October 1, 2006 and the date the

23  class may be certified, purchased in California a motorcycle

24  manufactured by Defendants with an air-cooled 88 or 96 cubic

25  inch V-Twin Cam engine.[2]

26  _____

27  [2] Plaintiffs' class certification motion expands this class
    definition to include California purchasers of 103 and 110 cubic
    inch engines.  But "[t]he court is bound by the class definition
28  provided in the complaint."  Berlowitz v. Nob Hill Masoni Mgmt.,
    1996 WL 724776, *2 (N.D. Cal. Dec. 6, 1996).  Therefore, the Court

1      II.    OPINION

2      A.    Legal Standard Motion for Class Certification

3      According to Federal Rule of Civil Procedure 23(a), a

4  plaintiff hoping to certify a class must demonstrate that

5  (1) the class is so numerous that joinder of all members is

6  impracticable; (2) there are questions of law or fact common to

7  the class; (3) the claims or defenses of the representative

8  parties are typical of the claims or defenses of the class; and

9  (4) the representative parties will fairly and adequately

10 protect the interests of the class.  Fed.R.Civ.P. 23(a).  The

11 plaintiff must also meet one of the requirements of Federal Rule

12 of Civil Procedure 23(b).  Only one such requirement is at issue

13 in this litigation: "that the questions of law or fact common to

14 class members predominate over any questions affecting only

15 individual members, and that a class action is superior to other

16 available methods for fairly and efficiently adjudicating the

17 controversy."  Fed.R.Civ.P. 23(b)(3).

18      Certification is proper "only if the trial court is

19 satisfied, after a rigorous analysis, that the prerequisites of

20 Rule 23(a) have been satisfied.  Frequently that 'rigorous

21 analysis' will entail some overlap with the merits of the

22 plaintiff[s'] underlying claim.  That cannot be helped."  Wal-

23 Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)

24 (internal citations omitted).

25      B.    Rule 23(a)

26            1.    Numerosity

27      Plaintiffs estimate that the number of class members likely

28 ─────────────────────────────────────────────────────────────

will address only the class alleged in the complaint.

5

1   exceeds 44,000.  William Kershaw Decl. in Support of Pls.' Mot.

2   for Class Certification (Doc. #62) ¶ 5 and Ex. 5.  Plaintiffs

3   maintain that the size of the class and their identity can be

4   ascertained from Defendants' records.  Thus, this class is

5   ascertainable and so numerous that joinder of all members would

6   be impracticable.  Fed.R.Civ.P. 23(a)(1).  Accordingly, the

7   Court finds that Plaintiffs satisfy the numerosity requirement.

8               2.  <u>Typicality</u>

9      Rule 23(a)(3) requires that the claims or defenses of the

10   class representative "be typical of the claims or defenses of

11   the class."  "A class representative must be part of the class

12   and possess the same interest and suffer the same injury as the

13   class members."  <u>Wal-Mart</u>, 131 S. Ct. at 2550 (citation

14   omitted).  The typicality requirement is satisfied only when

15   "each class member's claim arise from the same course of events,

16   and each class member makes similar legal arguments to prove the

17   defendant's liability."  <u>Stearns v. Ticketmaster Corp.</u>, 655 F.3d

18   1013, 1019 (9th Cir. 2011).

19      While this is a close issue because Defendants raise

20   arguments that Weyuker's motorcycle is not substantially similar

21   to other class vehicles, the Court finds that Weyuker is

22   typical.  Like all members of the prospective class, he was

23   injured by reason of the same alleged undisclosed defect in the

24   cooling system on his V-Twin Cam motorcycle and seeks to recover

25   pursuant to the same legal theories under California consumer

26   protection laws.  Accordingly, the Court finds that Plaintiffs

27   satisfy typicality.

28

1          3.   Adequacy

2      Rule 23(a)(4) has two requirements: (1) that the named

3  plaintiffs and their counsel do not have conflicts of interest

4  with the proposed class; and (2) that the named plaintiffs and

5  their counsel can prosecute the action vigorously on behalf of

6  the class.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th

7  Cir. 1998).  Challenges to adequacy are not relevant unless they

8  bear on the existence of conflicts among class members or

9  plaintiffs' ability to vigorously prosecute their case.  Id.

10     The Court finds that Plaintiffs satisfy the adequacy

11 requirement.  Plaintiffs' attorneys are members in good standing

12 of the California bar and have extensive background in

13 prosecuting complex litigation and class actions.  Weyuker has

14 vigorously prosecuted this action and he declares he will

15 continue to do so.  Though Defendants proffer an argument about

16 claims splitting creating a potential conflict of interest, the

17 Court finds that Weyuker and his counsel do not have any

18 conflicts that would bear on their ability to vigorously

19 prosecute their case.

20          4.   Common Questions of Law and Fact

21     The central disputed issue in this Motion for Class

22 Certification with respect to the Rule 23(a) requirements is

23 whether there are questions of law or fact common to the class.

24 Plaintiffs argue that there are common questions relating to

25 design defect, materiality, knowledge, and economic harm.

26          a.   Design Defect

27     Plaintiffs argue all of the class vehicles have the same

28 design defect – the air-cooled V-Twin Cam engines produce

7

1  excessive heat.  Plaintiffs contend that stringent emissions

2  standards require engines to run on a "lean" fuel mixture which

3  essentially means that there is less fuel and more oxygen in the

4  fuel mixture, resulting in higher combustion heat that is

5  intended to burn off more of the harmful emissions

6  (hydrocarbons) before they enter the atmosphere.  Plaintiffs

7  argue that the combination of this lean mixture and the large

8  size of Defendants' engines cause the excessive heat.

9      Plaintiffs surmise that they can prove the existence of the

10 common defect through common evidence – namely, that both sides

11 have the capacity to scientifically measure the temperature of

12 the skin of riders and to generate common evidence that will

13 scientifically prove or disprove whether the air-cooled V-Twin

14 design causes riders to experience excessive and unsafe skin

15 temperatures.  To prove that there is a scientifically reliable

16 method for measuring the alleged defect, Plaintiffs rely on

17 their expert, Darnell.  Darnell declares that the testing

18 methodology, as described by Defendants' expert, Matthew Wagner-

19 Jauregg ("Wagner-Jauregg") in his report, represents a reliable

20 methodology.  Decl. of Russell E. Darnell, Ph.D. ("Darnell

21 Decl."), Ex. 14 to Decl. of William A. Kershaw in support of

22 Opp'n to Mot. for Summ. J. ("Kershaw MSJ Opp'n Decl.") (Doc.

23 #87-17) ¶ 18).  Darnell used the same methodology as Wagner-

24 Jauregg on a smaller sample of motorcycles, but received

25 different results.  Id.

26     Defendants counter there is no common design defect because

27 there are 130+ distinct configurations of class vehicles and

28 Plaintiffs cannot use common evidence to prove the defective

1   nature of the class vehicles.  Defendants rely on their expert,

2   Thomas McGown ("McGown"), to argue that anything that can affect

3   the temperatures produced within the engine, the flow of air

4   over the engine or the rider's sitting position, posture and leg

5   position can affect the heat experienced by the rider.  Decl. of

6   Thomas McGowan ("McGown Decl.), Ex. A to Defs. Opp'n. to Pls.'

7   Mot. for Class Certification ("Defs. Opp'n to MCC") (Doc. #78-1)

8   ¶¶ 26-28.  Defendants continue that the temperatures produced by

9   every motorcycle engine depend, for example, on the design of

10  various engines and exhaust components, the size of the engine,

11  the design of the air filter, and the calibration of the engine.

12  Id. at ¶ 23.  The amount of radiant heat that actually reaches

13  the rider depends on the location and orientation of the engine

14  and its cylinders, the location of the exhaust system

15  components, the presence or absence of exhaust guards, the

16  presence or absence of air deflectors or exhaust shields located

17  between the rider and the engine, fairs and louvers, seat

18  height, foot rest location, heat management features, and

19  numerous other factors.  Id. at ¶¶ 21-22.

20      Of the cases Defendants cite to argue that the Court should

21  deny certification because there was no common defect, the Court

22  finds In re Hitachi Television Optical Block Cases, 2011 WL

23  4499036 (S.D. Cal. Sept. 27, 2011) particularly persuasive.

24      In Hitachi, the Plaintiffs identified forty-three different

25  model televisions alleged to have the same design defect.  2011

26  WL 4499036, at *3.  These models all used one of seven different

27  Optical Blocks.  Id.  The Hitachi Plaintiffs' expert stated,

28  similar to Darnell's testimony, that although there are minor

differences in the Optical Blocks, there is no material difference amongst them in the common design scheme. Id. at *3-4. The Hitachi Defendants, like the Defendants here, pointed out that there were numerous and significant distinctions in specific parts of the product. Id. at *4. The Hitachi Plaintiffs, like the instant Plaintiffs, did not appear to dispute that these differences exist, instead they argued the differences were immaterial. Id. at *5. The Hitachi court held that:

> There is no dispute that the Optical Block is made up of numerous component parts. It is not a single piece of equipment, nor was its design uniform across the different models at issue in this case. Under these circumstances, common issues do not predominate over individual issues on the issue of a design defect.

Id.

Similarly, this Court finds that the class vehicles do not have a uniform design across the different models. As McGown's Declaration demonstrates, there are more than 130 configurations and numerous factors affecting heat in the class vehicles. Because of these differences, the Court finds that there is no common method of proof to show whether there is a design defect.

Furthermore, Plaintiffs' expert, Darnell, declared he was able to test the methodology described by Wagner-Jauregg on only a small sample of motorcycles. Plaintiffs provide no evidence that the methodology used on a small sample can be extrapolated to all the class vehicles. In fact, Darnell concedes that the amount of heat experienced by riders depends on the design of the motorcycles, and "that there are too many variables to opine on." Depo. of Russell Darnell, Ph.D. ("Darnell Depo.") 134:22-

135:15.  At best, there is common evidence for some of the

motorcycles, but not for all of the class vehicles.  Thus, the

Court is not satisfied that there is enough common evidence to

prove a defect in class vehicles.

While the parties did not raise this argument, the Court

finds it telling that there are literally zero complaints about

the allegedly excessive heat.  See In re Canon Cameras, 237

F.R.D. 357, 359 (S.D.N.Y. 2006) (denying class certification in

part because there was no evidence of a common defect where a

small percentage, two-tenths of one percent, of the [class

product] malfunctioned).  Literally zero complaints suggest this

is a public-policy-driven lawsuit instead of a client-driven

lawsuit.

            b.   Materiality

Under the CLRA, materiality is determined by the effect on

a "reasonable consumer."  Falk v. General Motors Corp., 496

F.Supp.2d 1088, 1095 (N.D. Cal. 2007).  Defendants argue that

while materiality is generally determined by a "reasonable

consumer standard," if the issue of materiality or reliance is a

matter that would vary from consumer to consumer, the issue is

not subject to common proof, and the action is properly not

certified as a class action.

Defendants primarily rely on Webb v. Carter's, Inc., 272

F.R.D. 489, 504-03 (C.D. Cal. 2011). In that case, the plaintiff

alleged that defendants failed to disclose that infant clothing

contained "toxic chemicals that could cause adverse skin

reactions."  272 F.R.D. at 493.  The defendants presented

evidence "that materiality and reliance would vary from consumer

1   to consumer, such that the reasonable consumer standard cannot

2   be applied." Id. at 502. The defendants offered expert

3   evidence that if a warning had been given and read, "consumers

4   would not be expected to respond uniformly to the message." Id.

5   at 503. Therefore, the court concluded, materiality was "not

6   subject to common proof under the reasonable consumer standard

7   and that individual issues predominate." Id.

8       Plaintiffs distinguish Webb by arguing that unlike in this

9   case, the defendants in Webb provided substantial evidence that

10  the children's clothing tags at issue were not defectively

11  designed and involved omissions that may be material to the

12  consumer and his or her family, but not to the general public.

13  Plaintiffs argue that in cases discussing safety-related defects

14  in vehicles, as opposed to children's clothing, materiality can

15  be analyzed according to the "reasonable consumer" on a class-

16  wide basis. Plaintiffs cite Wolin v. Jaguar Land Rover North

17  America, LLC, 617 F.3d 1168 (9th Cir. 2010) and Chamberlan v.

18  Ford Motor Co., 402 F.3d 952 (9th Cir. 2005) to argue that

19  safety-related defects in vehicles constitute material

20  omissions, and whether a "reasonable consumer" would find

21  information that his or her motorcycle produces excessive heat

22  under reasonably foreseeable driving conditions to be material

23  is subject to class treatment.

24      Like the defendants in Webb, Defendants present evidence

25  from a human behavior expert, Dr. Christine Wood ("Wood"). In

26  her declaration, Wood establishes that materiality would vary

27  from consumer to consumer, such that the reasonable consumer

28  standard cannot be applied. Decl. of Christine T. Wood Ph.D.

1   ("Wood Decl."), Ex. M to Defs.' Opp'n to MCC (Doc. #82-1) ¶¶ 32-
2   37.  Defendants also rely on the testimony of former named
3   plaintiffs Jimmy Aldridge ("Aldridge"), Phillip Johnson
4   ("Johnson"), and Randy Vandermolen ("Vandermolen") who testified
5   that despite the allegedly excessive heat, they did not warn
6   their friends not to buy Harley-Davidson motorcycles and that
7   they would buy Harley-Davidson class motorcycles again.  See
8   Depo. of Phillip L. Johnson ("Johnson Depo.") at 26-27
9   (testifying that Aldridge never complained to him about the heat
10  before he purchased his motorcycle); Depo. of Jimmy L. Aldridge
11  ("Aldridge Depo.") at 39-40 (testifying that once he rode an
12  Ultra, he did not want to ride anything else, and if he bought
13  another motorcycle it would probably be an Ultra); Johnson Depo.
14  at 48 (testifying that he liked his motorcycle so much that when
15  he totaled it in an accident, he bought the exact same
16  motorcycle).

17      Plaintiffs counter that their CLRA claim does not require
18  an individualized showing of reliance.  See Chavez v. Blue Sky
19  Natural Beverage Co., 268 F.R.D. 365, 376 (N.D. Cal. 2010).
20  ("As to the CLRA claim[,] reliance on the alleged
21  misrepresentations may be inferred as to the entire class if the
22  named plaintiff can show that material misrepresentations were
23  made to the class members.")  Plaintiffs argue that where they
24  can show that material misrepresentations were made to the class
25  members, an inference of reliance arises as to the entire class.
26  Plaintiffs contend that since their CLRA claim is based on
27  Defendants' alleged failure to adequately disclose to consumers
28  that their motorcycles could reach unreasonable and excessive

temperatures, the "ultimate question of whether the undisclosed information is material is a common question of fact suitable for treatment in a class action." Keilhotz v. Lennox Hearth Prods. Inc, 268 F.R.D. 330, 343 (N.D. Cal. 2010) (citations omitted).

Plaintiffs admit that the proposed class action presents the confounding circumstance that Defendants have such a devoted following that they can successfully market and sell a defective product. Plaintiffs argue, without providing any proof, that it is common knowledge that Defendants knowingly promote an entire cottage industry to violate air emissions standards as the only practicable way to successfully market their defective air-cooled V-twin design. Plaintiffs submit that under these circumstances what matters is the defect in the stock design which produces excessive, unsafe and burning heat, Defendants' knowledge of it, and the materiality of it to a reasonable consumer.

The Court finds that while materiality is generally determined by the "reasonable consumer standard," there are numerous individualized issues as to whether the reasonable consumer purchasing one of Defendants' motorcycles would find the excessive heat material. Defendants offer persuasive evidence that the excessive heat would not be material to many of their consumers. Even the former named plaintiffs, knowing that the motorcycles cause excessive heat, would still buy and recommend the class motorcycles. This, in addition to Wood's expert testimony, indicates that there are multiple factors affecting what "reasonable consumers" would consider material

when purchasing one of the class motorcycles.  As this Court previously held in Sanchez v. Wal-Mart Stores, Inc., another case in which the Court found that class certification would not be proper,

> [t]here are innumerable variations in the experiences and information possessed by consumers, in the factors that influence consumers' purchasing decisions, and in the manner by which consumers react to product warnings and the disclosure of safety information. The putative class will include persons who knew about the alleged hazard, yet purchased the product anyway; people, like Plaintiff, who bought the [product] because of its price, size, and other characteristics; and many others for whom the 'warning' would have made no difference in their purchase decision.

2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009).

Accordingly, the Court finds that materiality is not an issue subject to common, rather than individualized proof.

### c.   Knowledge

Under the CLRA, a duty to disclose exists "when the defendant[s] had exclusive knowledge of material facts not known to plaintiff[s]." Falk v. General Motors Corp., 496 F.Supp.2d 1088, 1096 (N.D. Cal. 2007).

Plaintiffs argue that Defendants' knowledge is a common question because that knowledge will be the same and have the same effect as to every class member.  All of the claims of all members of the class "stem from the same source." Chamberlan v. Ford Motor Co., 223 F.R.D. 524 (N.D. Cal. 2004) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-20 (9th Cir. 1998)). Plaintiffs rely primarily on Defendants' engineering reports to prove knowledge.  See Decl. of Russell E. Darnell, Ph.D. in Support of Pls.' MCC ("Darnell MCC Decl."), Ex. 6 to Kershaw MSJ Opp'n Decl. (Doc. #87-6) ¶¶ 27-29, Ex. 3 (2003 engineering

report); Darnell MCC Decl. ¶ 32, Ex. 5 (2005 engineering report).  Plaintiffs argue that these reports illustrate that Defendants launched their model year 2007 motorcycles with an air-cooled engine that was known to produce "excessive engine heat."  Defendants counter that Plaintiffs have no proof that the engineering reports apply to the motorcycle owned by Weyuker or to the 130+ configurations of class vehicles.  Though the reports were generated several years before Weyuker purchased his motorcycle and Plaintiffs do not offer proof that the reports' findings apply to every motorcycle configuration, the reports show that Defendants had knowledge of potentially excessive heat in their air-cooled V-Twin models.  The Court finds Plaintiff's argument with respect to this specific issue to be more persuasive, i.e., this is an issue which appears more amenable to generalized proof (through Defendants' internal engineering reports) rather than individualized proof.

d.  Economic Harm

Plaintiffs submit that they could establish the amount of overpayments made for the defective product by determining the cost of a retrofitted liquid cooling system, which would cure the defect and deliver to class members the benefit of their bargain.  Defendants argue that calculating damages is not an issue subject to common proof because class members who have ridden their class motorcycles more than 150,000 miles, such as former plaintiff Vandermolen, cannot plausibly claim they "overpaid" for their motorcycles.  Furthermore, Defendants contend that both Darnell's testimony and the testing by Defendants' experts confirm that a retrofitted liquid-cooling

system would not necessarily result in any reduction in heat.

It is unclear from Plaintiffs' papers how they would calculate damages and the Court finds that Plaintiffs have offered no general method to measure damages.  As Defendants argue, if a class member purchased a motorcycle which allegedly emits too much heat but owns the motorcycle for several years and drives it for thousands of miles, that class member should not be entitled to recover any damages.

This Court previously rejected an almost identical argument in <u>Sanchez v. Walmart Stores, Inc.</u> where the plaintiffs alleged their strollers were "devalued" because of the alleged defect. <u>See</u> 2009 WL 1514435, *2 (E.D. Cal. 2009) ("[I]n Plaintiff's case, she made full use of the perfectly functioning Stroller for 18 months.  Plaintiff must prove that she did not receive her $20 worth from the Stroller.  It is impossible for her to prove that each and every one of the hundreds of thousands of potential class members did not receive the Stroller's worth either.").

Likewise, the Court rejects Plaintiffs' argument in the instant case that economic harm and damages can be resolved on generalized proof common to the proposed class.

C.   <u>Rule 23(b)(3)</u>

1.   <u>Common Questions Must Predominate</u>

In order to succeed on their Motion for Class Certification, Plaintiffs must not only demonstrate that there are questions of law or fact common to the class under Rule 23(a)(2), but under Rule 23(b)(3) Plaintiffs are also required

1    to show that the questions of law or fact common to the class

2    predominate over any questions affecting individual members.  As

3    discussed above, of the four common contentions identified by

4    Plaintiffs, only one issue – knowledge – might arguably be

5    resolved through generalized proof.  This finding alone leads

6    this Court to the conclusion that common questions of law or

7    fact do not predominate in this case.  In support of their

8    argument that Plaintiffs have also failed to satisfy the

9    requirements for class certification under Rule 23(b)(3),

10   Defendants have further identified a number of issues which

11   would require individualized proof.  These issues are discussed

12   below.

13            a.   <u>Class Members Purchased Class Vehicles for</u>
                  <u>Personal Use</u>
14

15        The CLRA only affords remedies for a "consumer," defined as

16   "an individual who seeks or acquires by purchase or lease, any

17   goods or services for personal, family, or household purposes."

18   Cal. Civ. Code § 1761(d).  Defendants argue that because some

19   motorcycles are purchased for business use, an individual

20   inquiry would be necessary to identify those purchasers.

21   Plaintiffs do not respond to this argument.

22        The Court finds that whether class members purchased a

23   class vehicle for personal or business use is not a common

24   question and will require individual examination.  <u>See</u>, <u>e.g.</u>,

25   <u>Arabian v. Sony Elecs., Inc.</u>, 2007 WL 627977, at *14 (C.D. Cal.

26   2007) ("[T]his legal requirement will require an individual

27   examination of the purpose for which each [vehicle] was

28   acquired.").  While this by itself might not preclude class

18

certification, it is nevertheless an individual question that weighs against class certification.

### b.   Harley-Davidson's Alleged Duty to Disclose

A manufacturer cannot be held liable for failure to disclose a fact under the CLRA unless the plaintiff establishes that the manufacturer had a duty to disclose that fact. Daugherty v. Am. Honda Motor Co., 144 Cal.App.4th 824, 838 (Cal. Ct.App.2d 2006).  A manufacturer has a duty to disclose safety risks in four situations: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.  See Smith v. Ford Motor Co., 749 F.Supp.2d 980, 987 (N.D. Cal. 2010) (citing LiMandri v. Judkins, 52 Cal.App.4th 326, 337 (Cal. Ct.App.4d 1997)).

Defendants argue that duty to disclose even a known, material fact does not exist unless the defendant has exclusive knowledge of that fact.  See Gray v. Toyota Motor Sales, U.S.A., 2012 WL 313703, *8 (C.D. Cal. Jan. 23, 2012) (granting the defendants' motion to dismiss because the court found it "absurd the idea that Toyota could have retained exclusive, or even superior knowledge of the [class vehicle's] real-world fuel performance over a three-year Class period in which hundreds of thousands of vehicles were driven daily under the conditions at issue.").

Despite Defendants' argument, courts do not apply

1    "exclusivity" with such rigidity.  Rather, exclusivity is

2    analyzed in part by examining whether the defendant had

3    "superior" knowledge of the defect.  This Court has already held

4    in this case that "[s]ince Defendant was in a superior position

5    to know of its defective engines, Plaintiffs properly allege

6    that Defendant had exclusive knowledge of material facts not

7    known to Plaintiffs."  Order Denying in Part & Granting in part

8    Defs.' Mot. to Dismiss (Doc. #47) at 15:25-28.  See also Decker

9    v. Mazda Motor of Am., Inc., 2011 WL 5101705, *5 (C.D. Cal. Oct.

10   24, 2011) (finding that plaintiffs sufficiently pled that

11   defendant had superior and exclusive knowledge of the defect

12   through its "dealerships, pre-release testing data, warranty

13   data, customer complaint data, and replacement part sales data,

14   among other internal sources of aggregate information about the

15   problem."); Falk v. General Motors Corp., 496 F.Supp.2d 1088,

16   1096-97 (N.D. Cal. 2007) (finding exclusivity where defendant

17   was in a superior position to know that its speedometers might

18   fail based in part on its aggregate data from dealers, pre-

19   release testing data and consumer complaints) (internal

20   quotations omitted).

21       The Court finds that for an alleged safety defect, like

22   excessive heat, the onus is not on the consumer who may or may

23   not be aware of a defect, but on the manufacturer who

24   exclusively has all of the aggregate data on its products

25   potential defects.  Accordingly, because the Defendants were in

26   a superior position to know of the alleged defect, this is not

27   necessarily an issue which can only be resolved through

28

1  individualized proof.[3]

2                    c.   Reliance and Damages

3       Proof of a CLRA violation requires proof of causation,

4  which in turn requires proof of reliance.  See, e.g., Nelson v.

5  Pearson Ford Co., 186 Cal.App.4th 983, 1022 (Cal. Ct.App.4d

6  2010) (CLRA requires "actual reliance").  To prove reliance,

7  each class member must prove that "had the omitted information

8  been disclosed, [he or she] would have been aware of it and

9  behaved differently."  Mirkin v. Wasserman, 5 Cal.4th 1082, 1093

10  (Cal. 1993).  For all the reasons discussed supra concerning

11  materiality, the Court finds that individual issues predominate

12  and Plaintiffs cannot prove reliance with common evidence.[4]

13                    d.   Summary of Individual Issues

14      For the reasons discussed above, while Plaintiffs have

15  raised some issues that might be amenable to proof through

16  common evidence, they have failed to satisfactorily demonstrate

17  that common questions of law and fact predominate over questions

18  _____

19  [3] Defendants argue that whether their conduct was "fraudulent"
   under the UCL requires individualized proof because the UCL claim
20  requires proof of a duty to disclose and, for the same reasons as
   the CLRA duty to disclose claim, Defendants argue individual issues
   predominate.  The Court finds that, like for the CLRA duty to
21  disclose, individual questions do not predominate the question of
   whether the conduct was fraudulent under the UCL.
22  [4] The Court also finds that individual questions predominate the
   "unfair" and "unlawful" prongs of the UCL.  For the reasons
23  discussed supra concerning the lack of common proof for a design
   defect, the Court finds that individual issues predominate
24  concerning whether Defendants' conduct was "unfair" under the UCL
   because Plaintiffs have not proven that all 130+ configurations
25  share a common design with Weyuker's motorcycle.  Similarly, for
   Plaintiffs to prove an injury necessary to make a claim that
26  Defendants violated product defect law, they would have to show
   (1) that each class member actually experienced injury-causing
27  heat, and (2) the injury-causing heat was caused by a defect in the
   class member's motorcycle and not by causes for which Defendants
28  are not responsible.

1  affecting only individualized members.   In short, neither the

2  Rule 23(a)(2) or Rule 23(b)(3) class certification requirement

3  that common questions of law and fact will control the

4  evidentiary proof in this has been met.   Accordingly,

5  Plaintiffs' Motion for Class Certification must be denied.

6          2.   <u>Superiority of Class Action</u>

7       While the Court need not reach this issue, it has

8  considered the parties' arguments and offers the following

9  findings.   In determining superiority, four considerations are

10  relevant: (1) the interest that members of the class have in

11  individually controlling the prosecution of separate actions;

12  (2) the extent and nature of any litigation already commenced by

13  members of the class; (3) the desirability of concentrating the

14  litigation in the particular forum; and (4) the likely

15  difficulties in the management of a class action.   Fed.R.Civ.P.

16  23(b)(3).

17       In addition to the fact that it would be difficult to

18  manage this class action because, as discussed <u>supra</u>, nearly all

19  the alleged common questions of law and fact are not subject to

20  common proof and individual issues predominate, a class action

21  may not be a superior method of litigating this case because

22  there is relief through other channels.   The class vehicles at

23  issue are subject to the jurisdiction of the National Highway

24  Traffic Safety Administration ("NHTSA"); <u>see</u> 49 U.S.C. § 30102

25  (defining "motor vehicle").   Plaintiffs, or any interested

26  party, can petition NHTSA to investigate the alleged safety

27  issues, and if NHTSA finds that motorcycles contain a defect

28  related to motor vehicle safety, it is required by law to order

1  Defendants to recall the motorcycles to fix the defect.   49

2  U.S.C. §§ 30162.   See also In re Bridgestone/Firestone, Inc.,

3  288 F.3d 1012, 1019 (7th Cir. 2002) (recommending administrative

4  remedy because the single nationwide class is not manageable);

5  In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174

6  F.R.D. 332, 353 (D.N.J. 1997) (same); Kia Motors Am. Corp. v.

7  Butler, 985 So.2d 1133, 1142 (Fla. App. 2008) (NHTSA recall is a

8  better course of action for uninjured class members).

9  Accordingly, the Court finds that the Motion for Class

10  Certification should be denied since it is not convinced that a

11  class action is superior to other available methods for fairly

12  and efficiently adjudicating this controversy.

13

14                    III.    ORDER

15      For the reasons set forth above,

16      Plaintiffs' Motion for Class Certification is DENIED.

17      The Court recognizes that Defendants' Motion for Summary

18      Judgment is still pending and hereby lifts the stay on this

19      Motion. The hearing on this Motion is set for August 22,

20      2012 at 9:30 a.m. in Courtroom 6.  Plaintiffs' may file a

21      supplemental Opposition no later than two weeks before the

22      hearing and Defendants Reply is due one week before the

23      hearing.

24      IT IS SO ORDERED.

25

26  Dated: May 23, 2012

27                      JOHN A. MENDEZ,
                        UNITED STATES DISTRICT JUDGE

28